Everyone is ready. The next case for argument is United States v. Benally, docket 20-21-57. Ms. Carey. Thank you, Your Honor. May it please the court, my name again for the record is Emily Carey with the Federal Public Defender's Office and I represent the appellant Angelica Benally. It's well established the courts may only order restitution if there's a statutory basis to do so. The district court's restitution order in this case exceeded its statutory authority because it awarded restitution to an individual associated with a dismissed count. The restitution statutes authorize courts to order restitution under certain circumstances when sentencing a defendant convicted of an offense only for a victim of the offense unless the defendant agrees in a plea agreement to expand restitution to other persons. And did that happen here? Did the plea agreement permit the restitution that's challenged here? Your Honor, it did not. Our position is that the plea agreement by, and forgive me, Your Honor, the plea agreement did have a portion in the restitution where we agreed to pay mandatorily restitution for the victim of the offense of conviction. The offense of conviction in this case, Your Honor, is involuntary manslaughter. That's an offense which prescribes the unlawful killing of a specific person as named in the indictment and where jurisdiction arises in Indian country where both the defendant and the victim are Indian as that's described under the law. Although Ms. Benally was initially charged with aggravated assault pertaining to the driver of the other vehicle, that count was dismissed as part of the party's plea agreement. When you look at the plea agreement, which hopefully you have it right there at hand, paragraph 616 talks about restitution. It's two sentences. Correct. The second sentence, doesn't that bind the defendant here? No, Your Honor. What that sentence does is involuntary manslaughter is not a qualifying offense under the Mandatory Victim Restitution Act. And in order to ensure that restitution was paid mandatorily to LC in order to make LC, or in this case, his family standing in his shoes whole, the parties agreed to, or Ms. Benally agreed as part of the compromise of the plea agreement, to invoke subdivision C2 in order to make restitution mandatory for LC. The term give rise to just means that the dismissed aggravated assault count was a catalyst for it was contemplated when the parties reached a negotiation. But in no way does that represent an agreement by Ms. Benally that she would pay restitution for the driver of the other vehicle. And in fact, I think that's also clear. I think it's clear from the language in the plea agreement, but even if the court were to determine that the plea agreement were ambiguous, it's also clear from the record that Ms. Benally did not intend to pay restitution to a victim associated with a dismissed count. If we look at the plea colloquy during the Rule 11 hearing, the government was asked to inform Ms. Benally about the elements of the crime to which she was pleading. And in relevant part in page eight of the transcript, which is document 67 of volume three in the record, the government informed Ms. Benally that the government must prove that she caused the death of a victim and that the representing a singular victim. The prosecutor then advised the court that Ms. Benally was only pleading to count one and that the court and the court then told the government did not have to say what the associated penalties were for count two. The government never corrected the court when the court only talked about a singular victim. And then on the next page of that transcript, the court asked Ms. Benally if she understood if there was an element to the restitution, the victim or the family. Again, referencing a singular victim and the government never corrected the court. And so we believe that it is clear not only from the plain language of the plea agreement, but also from the plea colloquy and the sentencing hearing. Does the plea agreement limit the district court's restitution authority? Your Honor, the district court's authority to award restitution is limited strictly by statute. The parties can expand the persons to whom restitution is authorized by explicitly putting that in the plea agreement, but it is the statute that would limit the district court's authority to award restitution. In your view, what was what was agreed to as regards restitution? Your Honor, in our view, what was agreed to with restitution is that Ms. Benally was in order to ensure that the the victim of the offensive conviction here in voluntary manslaughter was awarded mandatory restitution. She agreed to invoke subsection C2 to make restitution mandatory where it otherwise would not be. And in fact, your Honor, as part of our supplemental briefing, we have now noted that the MVRA is not the applicable statute at all because aggravated assaults under subsection 113A6, which was the offense that would have given rise to invoke the subdivision C2, is no longer a crime of violence or a qualifying offense. So is this plea agreement withdrawn? Your Honor, we're not asking to withdraw the plea agreement. Ms. Benally has accepted responsibility for her conduct. She is currently serving an attorney in Virginia right now. What we are asking is is that the court find that that there was no agreement that the driver of the other vehicle was a victim of the offense, excuse me, that there was no agreement to expand restitution and that the driver of the other vehicle is not a victim under the offensive conviction. As I understand it, the the agreement, correct me if I'm wrong, the agreement permitted the court to award restitution when it statutorily would not be able to do so. Is that right? In part, your Honor, the agreement allowed the court to mandatorily order restitution where it would not otherwise be required to order restitution. Okay. It did not expand the definition of who a victim under the offensive conviction is. And so I mean, when we get into these vagaries and and the it seems from the agreement that one could read it to say the judge could award restitution in a more broad sense than perhaps the statute permits. I mean, it's almost feels like invited air. Your Honor, I don't know that I agree with that. I think the language here, what it reads to us and how we interpreted it is that we were agreeing that restitution would be mandatory for the victim of the involuntary manslaughter conviction. Did you say that, counsel? I mean, you say that's your position. Does anybody besides you know that that's what your position was? Your Honor, this was this was in the defendant's. This was specifically stated in the defendant's reply at the trial court level to the objections to the PSR. This was noted during the sentencing hearing. And the government, you know, it appears that there wasn't a meeting of minds on this point because the government, I believe in footnote six of its answer brief to this court states what it believed the government's position was when we were making that agreement. So you say there was not a meeting of the minds? It appears not to have been, Your Honor. Again, I don't know that this was clear to the parties until the objections, excuse me, until the pre-sentence report came out and the parties issued their objections in response to those objections. Counsel, you've referenced Borden and on the third and the fourth prong, the government was pretty thorough as far as explaining why it should prevail on those prongs, whereas the defendant didn't really respond to that that I saw. The government says even if, well, prongs one and two are met, Borden came along, but no substantial prejudice because the 3663 versus the 3663A definition of victim is the same thing. And the difference is under the VWPA is that the court is required to look at the financial circumstances of the defendant, which the court already did in this case. And so there's not a reasonable probability of a different outcome. There's not substantial prejudice. And when you have a woman hurtling down the interstate at 90 miles an hour, the wrong direction and crashing into someone, the public integrity of court proceedings probably won't be at risk if the person's allowed to pay, or is required to pay a hundred dollars a month. What's wrong with that argument? Your Honor, thank you. And again, with regards to plain error, and I'm assuming that the court is talking about whether the MVRA versus the VWPA should apply. And I request that if the court doesn't agree with us, that the driver of the other vehicle was not a victim of the offense of conviction under the statute that we are asking the court to remand for the court to remand. But with regards to affecting substantial rights, the court was stripped of its discretion and did not consider the economic circumstances when determining whether to award restitution and the amount of restitution. That's not quite right. There was information in the PSR about her financial circumstances, and it was raised during the sentencing hearing. Not saying it was thorough, but there wasn't a lot to talk about, was there? This is her income. She makes $1,600. She's got a disability. She's able to work in housekeeping in a hotel. What more does the district court need to know? No dependents. Correct, Your Honor. And we didn't address this at the trial court level, precisely because at that point, restitution was determined to be mandatory and the court was not allowed to consider economic circumstances. Well, I'm asking, what would you do the second time around? If you went back to district court, what would you say now that would persuade the district court to do something different? Well, certainly, Your Honor, I think that there are additional factors, additional things that, particularly with Ms. Benally's disability now, that are going to impact the amount of money that she can make, the type of work that she can do. Obviously, at this point, she's now been incarcerated for over a year and will continue to be incarcerated. She doesn't have a home anymore. She doesn't have any belongings. All of that disappeared as a result of this accident, but also as a result of her prolonged incarceration. And I do think that those factors matter. The court had made it seem like an all or nothing proposition, and I don't think that this circuit has made any determinations about whether a court has the discretion to set or reduce the amount of restitution. And there's a really, albeit a district court case, there's a district court case out of the District of Columbia that talks about how only the Fourth, Sixth, and Seventh Circuits have held on to this all or nothing proposition that the court can, under the VWPA, either has to award restitution or can look at economic circumstances and not do it, and this court hasn't made a determination about that. And so, I do believe that the court could set or reduce the amount of restitution based on economic circumstances. And, Your Honors, if I could reserve the remainder of my time, please. Thank you. Very well. Mr. Mendenhall. Good morning, Your Honors. Frederick Mendenhall. Good morning. Frederick Mendenhall. I'm an assistant United States attorney from the District of New Mexico, and may it please the court. Ms. Benally raises several issues to this court today. I believe all but one are covered by the appellate waiver in the plea agreement, and I'd like, with the court's permission, to address the one that's not covered, and it's whether J.G. is a victim. Now, the test in this court is clear. It comes from Supreme Court case law, this court's case law, and the text of the VWPA and MVRA. The court is to look at the conduct underlying the offense of conviction, and then it asks, okay, who did that conduct harm? And, in this case, the answer is clear. The conduct underlying the offense of this conviction is that Ms. Benally drove drunk on I-40 the wrong way, 90 miles per hour, and crashed into another vehicle. And there's no dispute that that conduct harmed two people. It harmed Elsie, but also... You would move away from whether or not we have a qualifying offense under 3663AC1? Your Honor, I would submit to the court, because under 3663A1, is the court referring to the VWPA or the MVRA? MVRA. Yes, Your Honor, I would concede to this that MVRA doesn't apply anymore because of Borden, and there is no qualifying crime of violence that gave rise to this plea agreement. But I would submit to the court that the restitution order is still lawful under the VWPA, because the definition of victim is the same. It's still... It's still the same test. You look at the conduct underlying the offense of conviction and ask who it harms. And for that reason, this restitution order is lawful under either of the statutes, and it applies to both victims. It applies to JG and also to Elsie. Ms. Benally's argument to the contrary, how I understand it from the reply brief, is that involuntary manslaughter convictions, assault convictions, murder convictions, they're just simply different. They're different because those statutes, they contemplate a singular victim. And I would submit to the court that the court should not accept that argument for two reasons. One, it's not grounded in the text of the VWPA. If you look at the text of who is a victim, there are two ways somebody can be a victim. Now, one way is not at issue today, and it talks about a scheme, a pattern, or a conspiracy, and that's not at issue today. The other portion, which is at issue, is the language as a victim is somebody directly and proximately harmed as a result of the commission of an offense. And that text is clear. It doesn't say, hey, we treat robberies different from involuntary manslaughter. There's no language in there that says we treat offenses differently. A victim is a victim, whether it's in a robbery or an involuntary manslaughter or a murder. It's clear that there can be more than just the victim contemplated in the elements of the offense. And the second reason I would give to the court is this court's case law. And I would point it to a case that defense counsel, Appellant's counsel, cited. It's United is 175F3D782. And in that case, the court was considering a voluntary manslaughter conviction. And the defendant there below contested a restitution award given to the decedent's family members, his children. And it's very clear, if we follow defense counsel's reasoning, those victims, those children could not have been awarded money because those aren't the victims contemplated in a voluntary manslaughter conviction. It's not the deceased. The court instead, it didn't do that analysis. Instead, it looked at the same language we're looking at today and asked, OK, a victim is someone directly and proximately harmed as a result of the commission of offense. Clearly, these children were harmed by this offense because they are no longer getting income from their father. And I want to be very clear, there is some text in the VWPA and MVRA, excuse me, that says, OK, victims' family members can assume the rights of a decedent. But this court was clear, it wasn't doing that analysis. It wasn't saying, OK, these children are assuming the rights of a victim. It's saying, no, they are victims under the same language we're looking at today, which is somebody directly and proximately harmed. And so, in your opinion, is the case just outright dispositive in that than the children did in Checkera? Yes, Your Honor, it is. And you didn't cite that case. Is it something that just wasn't seen or was there a reason? Your Honor, to be frank, I was not aware of the case until I read it in Defense Counsel's reply brief. Your Honors, there was some discussion in the briefing about a case called United States v. VWPA. And in those cases, the court was dealing with, OK, what is conduct underlying the offense? You keep referring to the offense. Don't we have to have the designated offense under MVRA for restitution to apply? Yes. If I'm understanding the court's question correctly, it's saying, oh, the MVRA doesn't apply anymore because there's no longer a crime of violence. Am I following? No, I'm not saying that. I'm saying when we read the MVRA, doesn't it restrict restitution to certain crimes? Yes, Your Honor, it does. It does restrict restitution to certain crimes. And the United States position... And follow that through to how we get to restitution here. Yes, Your Honor. The way we get to restitution here is that a court has authority to... A district court has authority to enter restitution only by statute. Now, there are two statutes that govern restitution. There is the MVRA and there is the VWPA. Now, at the time of the plea agreement, we all thought, both me and Ms. Benally's counsel thought the MVRA applies because a crime of violence gave rise to this plea agreement. And that's why... That was correct, right? Yes, at the time it was. At the time of the Yes, Your Honor, it was. I'm sorry to interrupt. Go ahead. Today, because of Borden, the United States concedes that assault resulting in serious bodily injury is no longer a crime of violence. And because of that, the MVRA's provisions do no longer apply. But the United States position is the restitution order entered by Judge Riggs is still lawful under the VWPA. And the VWPA authorizes restitution for any crime under Title 18, which would include the involuntary manslaughter conviction at issue here. And that's why the restitution order is still lawful today. Did that answer your question, Judge Briscoe? I understand your position. Thank you. Okay. Moving on to some of the other arguments raised, the United States position is that they are all foreclosed by the appellate waiver in the plea agreement. Ms. Benally raises several issues attacking the foundation of that appellate waiver, and I would urge this Court to reject them, reject all of them. The first one I'd like to raise is that Ms. Benally argues that the District Court never accepted the plea agreement, and because it never accepted it, the appellate waiver is unenforceable. There's a premise embedded within that argument, and it is this. It is that for an appellate waiver or a provision of a plea agreement to be enforceable, the District Court first has to accept it. And I would urge this Court to reject that reasoning for several reasons. It's not grounded in the text of Rule 11, which governs plea agreements. There is no requirement that every plea agreement be accepted before it's enforceable. It does have some provisions that certain clauses, 11C1, certain types of plea agreements and clauses specific to those plea agreements do need to be accepted by the District Court, but that does not include appellate waivers within the plea agreement. In addition... Because this has come up to us before. Granted, we said no to you without prejudice, but what we said was the defendant is challenging the legality of the restitution order because she contends the District Court got it wrong on what victim means, which is a legal question, and that there are no facts in dispute. And accordingly, the appeal waiver doesn't cover that challenge to the legality. And isn't that so? Your Honor, I would say with respect to the question about J.G., I completely agree, Your Honor. I'm not contesting that today. In terms of the other arguments that Ms. Benally raises that do not go to the legality or the authority of the District Court to enter that order, the appellate waiver still applies and it's not covered by this Court's previous order. And specifically questions... Arguments raised about Ms. Benally did not have notice. Ms. Benally... There was a due process violation. Those questions, those issues raised by Ms. Benally do not go to the authority of the Court to enter the restitution order. They go to whether there was some procedural error along the way, which the appellate waiver, our position is, still covers. Well, do any of those arguments even matter, so long as we continue with the same view that we had with the panel rejecting your position earlier? Do we care about any of that stuff? Your Honor, I think those arguments fail on the merits for the reasons articulated in my brief. I'm sorry, Judge Phillips. I'm not sure if I'm understanding your question. My question is this. As you know, you appealed the appeal waiver and a panel of this Court said, no, it's a legal question that's being raised. And the same question is before us now, which is what does victim mean? And so the appeal waiver doesn't cover that, does it? Unless you have a new argument that didn't come up last time. Your Honor, it does not cover the issue what a victim means under the MVRA. So we are perfectly fine addressing that and either affirming or reversing and remanding based on that. And that's what's in front of us, isn't it? Yes, Your Honor. The rest of all of this other stuff, whether the District Court accepted a plea agreement or whatever else, I don't know why any of that matters. Your Honor, to the extent those other issues would undermine this Court's reasoning for affirming the District Court, I would represent to the Court that on the merits, they have no basis to that question about victim. I would agree with that. Well, does Borden even apply here? Do we get to that if we have an agreement by the parties? That is that restitution can be extended beyond the statute? Your Honor, I do not believe you have to reach that issue. If we do, how would we rule? If you reach the Borden issue about whether the MVRA or the VWPA applies, Your Honor, I would echo Judge Phillips' points from earlier in terms of it's an issue under plain error review and there is an evidence that the District Court would have done anything differently had it operated under the VWPA originally. Does the agreement come into play at all? Your Honor, I would say going to some of the questions Your Honor was raising earlier to Ms. Carey in terms of the plea agreement, the terms are straightforward. It says the MVRA applies. That's what the agreement was, not the subjective expectations of the parties. And because of that, the Court entered an order under the MVRA and rightfully interpreted what a victim means under that statute, which is identical under the VWPA, and that covers JG. And I would urge the Court, if it reached the Borden issue, to affirm the District Court by saying there was no plain error for it entering this order under the MVRA because an identical order could issue under the VWPA. And there is insufficient evidence that the District Court would do anything differently should it be remanded to the District Court. Do we have the issue in front of us of whether the parties by agreement can extend the coverage of the MVRA? Your Honor, I know, Your Honor, and the answer to that is the plea agreement terms, I agree with what Ms. Carey represented in terms of that second sentence. The purpose of that sentence was to invoke the reason for why the MVRA was applying in and not to extend restitution beyond the victims. The United States position, however, is JG is a victim. Well, that is an extension, isn't it? What you agreed to, or what you are now saying you agreed to, does extend the coverage of the MVRA because you don't have a covered crime. Yes, Your Honor. To the extent that the agreement was to get to that involuntary manslaughter as a covered crime, yes, it did extend the MVRA. And unless the court has any other questions for me, I'd ask this court to affirm the District Court. Ms. Carey, could you start with Chakra and why that just doesn't beat you flat out? Yes, Your Honor. As far as the victim element. Yes, Your Honor. Chakra was a CF reference in our case that we didn't discuss in any detail at all because I don't think it's dispositive in this case. That was a case where the issue was around lost income support payments and whether the state itself could be the recipient of those payments. That's all side light. The question that I have is how are those children of the person who was killed in involuntary manslaughter any more victims than is JG in this case? If those children can be victims, why can't JG be a victim? In that case, the court found that the children and again, I don't know that I agree with the reasoning, but the court found that the children were directly and possibly harmed by the offensive conviction in that case. Ms. Benally here was not convicted of aggravated assault. The question before the court today is the very question that was before the court in Huey over a quarter of a century ago, which is when an individual is charged with multiple offenses, but only pleads guilty to one offense, may that individual be held responsible for restitution for the offenses that are dismissed? And the court resoundingly held no. Charged but unconvicted conduct cannot be the basis of an award of restitution. And I think the first question is what is the offensive conviction in this case? And very clearly, the offensive conviction is involuntary manslaughter. And while the United States tries not to distinguish the aggravated assault, involuntary manslaughter, murder from other types of statutes, I think we have to in this case. Context matters. The specific statutes at issue in this case are bound. The offensive conviction is bound by the named victim in the indictment. OK, so let me pose you a hypothetical, which is everything is the same in this case, except there are two passengers in the back of Ms. Bentley's car, one of whom is rendered paraplegic and the other is damaged and suffers brain damage. What you're saying is she owes them no restitution because they're not victims of an involuntary manslaughter. I am what I am saying, Your Honor, is that that the restitution statutes don't extend to dismissed counts. They there are some stop and answer my question, which is, would you say that Ms. Bentley does not have to pay any restitution to those people because they're not a result of involuntary manslaughter? And so she's off the hook as far as they're concerned. Absent another charge. Absent another charge and another conviction for the harms caused to those individuals. Yes, Your Honor. Statutorily, we are saying that she would not be required to pay restitution as under the statute. Thank you. I've got one question. Doesn't Justice Marshall's language, I believe it's in Dewey, require us to look at the underlying conduct and not the elements? And Your Honor, I'm about to run out of time. May I answer your question? Please. That's why I ask the question. Thank you, Your Honor. No, Your Honor. And we certainly agree. I mean, we certainly do not dispute that the court's holding in Huey is that Congress intended to authorize restitution only for loss caused by the specific conduct that is the basis of the offense of conviction. However, it did go on to say that restitution is not permitted for losses associated with additional counts of the indictment for which a person is not convicted. And I think that this court's reasoning in Mendenhall does show that the bounds of the count of conviction and the bounds of the restitution order are the elements of the offense for which an individual was convicted. Thank you. Thank you. Any other questions? Good to go. All right. Thank you, counsel, both for your helpful arguments. The case is submitted and counsel are excused. Thank you, Your Honor.